FEB 12 '97  09:37AM USAO-SDNY TRIAD 4TH FLOOR

**WARRANT FOR ARREST**

# United States District Court

| | U. S. DISTRICT COURT |
|---|---|
| | N. D. OF N. Y. |
| | FILED |
| | JUN 16 1998 |
| | LAWRENCE K. BAERMAN, Clerk |

**UNITED STATES OF AMERICA**
v.
**ORLANDO CASTRO LLANES**

DISTRICT: SOUTHERN DISTRICT OF NEW YORK

DOCKET NO.

MAGISTRATE CASE NO.

NAME AND ADDRESS OF INDIVIDUAL TO BE ARRESTED:
ORLANDO CASTRO LLANES

6:98m 225

WARRANT ISSUED ON THE BASIS OF:
☐ Indictment  ☐ Information  ☐ Order of Court
☒ Complaint

TO: UNITED STATES MARSHAL OR ANY OTHER AUTHORIZED OFFICER

DISTRICT OF ARREST:
CITY:

YOU ARE HEREBY COMMANDED to arrest the above-named person and bring that person before the nearest available magistrate to answer to the charge(s) listed below.

**DESCRIPTION OF CHARGES**

Offenses charged in Venezuela, including the illicit diversion and fraudulent use of public funds.

| IN VIOLATION OF | UNITED STATES CODE TITLE | SECTION |
|---|---|---|
| | 18 | 3184 |

BAIL FIXED BY COURT:  OTHER CONDITIONS OF RELEASE:

ORDERED BY: THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

SIGNATURE (JUDGE/MAGISTRATE): /s/ Theodore H. Katz

DATE:

CLERK OF COURT: JAMES N. PARKISON

DEPUTY CLERK:

DATE ISSUED:

**RETURN**

This warrant was received and executed with the arrest of the above-named person.

DATE RECEIVED:  NAME AND TITLE OF ARRESTING OFFICER:
DATE EXECUTED:  SIGNATURE OF ARRESTING OFFICER:

United States Judge or Judge of a State Court of Record

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X

IN THE MATTER OF THE EXTRADITION       :
                OF                     :   COMPLAINT FOR PROVISIONAL
                                           ARREST WARRANT WITH A
ORLANDO CASTRO LLANES.                 :   VIEW TOWARDS EXTRADITION
                                       :
- - - - - - - - - - - - - - - - -X

*96CrimMisc1p13*

      Mei Lin Kwan-Gett, an Assistant United States Attorney for the Southern District of New York, being duly sworn, states on information and belief that the following is true and correct:

    1.   In this matter I act for and on behalf of the Government of Venezuela ("Venezuela").

    2.   There is an Extradition Treaty in force between the United States of America and Venezuela, signed on January 19 and 21, 1922, 43 Stat. 1698; TS 675; 12 Bevans 1128; 49 LNTS 435.

    3.   The Treaty provides in Article 11 for the provisional arrest and detention of alleged fugitives pending the submission of a formal request and supporting documents.

    4.   In accordance with the Treaty, Venezuela has submitted a formal request through diplomatic channels for the provisional arrest and extradition of ORLANDO CASTRO LLANES;

    5.   According to the information provided by Venezuela in the form authorized by the Treaty, ORLANDO CASTRO LLANES was charged with illicit diversion and fraudulent use of public funds, in violation of Article 71, ¶ 2 of the Venezuelan Statutes Regulating the Protection of Public Property; and illicit financial

intermediation; preparation, signing certification, presentation or publication of false financial information; illicit appropriation or diversion, for personal benefit or for the benefit of others, of resources owned by Grupo Latinoamericana-Progreso; the forging or issuance of documents of the use of false data with the intention to commit or conceal acts of fraud or embezzlement, and the fraudulent approval of credits granted to subsidiary or affiliated companies, punishable under Articles 288, 293, 209, 291 and 289, respectively, of the Venezuelan General Law Regulating Banks and Other Financial Institutions. A warrant for his arrest was issued on March 29, 1996, by the Twenty Fourth District Court in Criminal Banking Matters and of Protection of Public Property, with national jurisdiction. The charges are covered by Article 2, Nos. 15, 18, 19, and 20 of the Treaty.

6. The warrant was issued on the basis of the following facts:

a. ORLANDO CASTRO LLANES is the former President of Banco Progreso. He was succeeded by his son, Orlando Castro Castro, in that post. He was the Principal Director of the Fondo Financiero Latinoamericana C.A., a subsidiary of Banco Progreso. He later became the owner of several companies that were part of the Latinoamericana-Progreso group, and he exerted substantial control over the Boards of Directors of those companies.

b. Banco Progreso, a financial institution founded on December 17, 1980, and registered under Venezuelan law, received financial support by Venezuela through the Deposit Insurance and

Banking Protection Fund (Fondo de Garantia de Depositos y Proteccion Bancaria-FOGADE), in an amount of Bs.37,900,000,000.00 (US$222,941,170.00). The financial assistance was intended to enable the bank to honor its commitments to its depositors and reach the liquidity levels required by the Venezuelan banking supervision authorities.

c. As a precondition for the financial assistance, Banco Progreso's shareholders pledged the contribution of their own resources, a minimum of Bs.2,500,000,000.00 per month, which would be capitalized in order to meet short term solvency problems and to increase its capital by Bs.20,000,000,000.00.

d. An agreement between FOGADE and Banco Progreso, previously authorized by the bank's Board of Directors, was signed on August 8, 1994.

e. FOGADE's financial assistance was given in the form of a package of six disbursements, made through the Banco Industrial de Venezuela, a public financial body, from August 8 to August 17, 1994. Under the agreement, Banco Progreso was to begin reimbursing the financial assistance funds within six months of the first disbursement.

f. Banco Progreso's directors asked the Venezuelan financial authorities to replace the capital injection program by underwriting shares (par bonds), which would appear immediately in the financial statements. Banco Progreso announced that it had purchased par bonds from its subsidiary, the Fondo Financiero Latinoamericana C.A., for a sum of US$95,150,000.00

(Bs.16,175,000,000.00 at the exchange rate in effect on that date).

g.  When Venezuelan banking authorities later performed an audit of Banco Progreso, they determined that the par bonds Banco Progreso had claimed to have purchased in fact never existed. Several of the documents handed over by Banco Progreso to the monetary authorities who had allegedly supported the transfer of these securities had been forged and the rest only covered future call options.

h.  Banco Progreso failed to comply with the terms of its agreement with FOGADE, and was not able to overcome its solvency or liquidity problems. It did not honor most of its commitments to its savers and investors, nor did it reimburse the Banco Industrial de Venezuela for any assistance money it had received. Furthermore, it did not carry out the injection of capital in the manner agreed upon and, in addition, it deceived the Venezuelan banking supervision authorities regarding the alleged existence and purchase of the above-mentioned par bonds.

i.  The financial assistance funds were distributed among several subsidiary companies owned by the Castro family, which, in turn, diverted them to accounts in Banco Progreso's "placements desk," for the personal and direct benefit of the Castro family.

j.  In addition, the audit revealed that Banco Progreso's financial statements had been systematically altered in order to conceal its accumulated losses. Banco Progreso's accounting manager at the time, under direct orders given by

Orlando Castro Castro and Orlando Castro Llanes, used a fraudulent accounting system to repeatedly deceive the Venezuelan public and its financial authorities. These alterations affected all of the bank's monthly financial statements from January to November, 1994.

k.  Banco Progreso's accounting manager admitted having forged the financial statements, and his statement was corroborated by the report submitted by the experts appointed by the court trying the case, by various statements made by the officials who were in charge of monitoring the national financial system and by some of Banco Progreso's employees.

7.  I am informed through diplomatic channels that ORLANDO CASTRO LLANES fled from Venezuela, and is currently is in the custody of New York State authorities awaiting trial on other charges in the County of New York.

8.  I am informed through diplomatic channels that ORLANDO CASTRO LLANES was born on October 30, 1925, and is 5 feet, 7 inches tall, weighs about 160 pounds, and has brown eyes and gray hair. He also has a beauty mark under his right eye.

9.  The offenses with which ORLANDO CASTRO LLANES are charged are among those listed in Article 2 of the Extradition Treaty between the United States and Venezuela, and an additional article, between the United States of America and the United States of Venezuela; 43 Stat. 1698; TS 675; 12 Bevans 1128; 49 LNTS 435.

10.  Venezuela has represented that it will submit a formal request for extradition, supported by the documents specified in the Treaty, within two months after the arrest warrant

5

is served, as required by Article 12 of the Treaty.

6

WHEREFORE, the undersigned complainant requests that a warrant for the arrest of ORLANDO CASTRO LLANES be issued in accordance with Title 18, United States Code, Section 3184, and Article 2 of the Extradition Treaty between the United States and Venezuela.

_____
Mei Lin Kwan-Gett
Assistant United States Attorney

Sworn to before me this
17th day of May, 1996

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK